GEORGE G. GREENBURG, Appellee, *vs.* S. D. CHILDS & Co., Appellant.

*Opinion filed October 26, 1909.*

1. ASSUMPSIT—*when assumpsit lies.* Assumpsit lies to recover from the defendant corporation the amount due the plaintiff under the corporation's agreement to pay the value of such of the plaintiff's materials as were used by the corporation in its business, even though the plaintiff had the privilege, if his account reached the sum of $3000, (which it never did,) of taking in payment stock of the corporation of the par value of $10,000.

2. SAME—*when plaintiff is not in default.* Where a corporation agrees with its employee to pay him the value of such of his materials as are used by the corporation, and the employee is thereafter given the privilege of taking in pay stock of the corporation of the par value of $10,000 when he had paid, in credit or money, $3000, but the employee does not obligate himself to take the stock or to make up in cash the difference between his account and the $3000, the failure of the employee to make up such amount and demand the stock is not a defense to his suit to recover what is due him for the materials used.

3. EVIDENCE—*when proof of what plaintiff paid for material is immaterial.* Where a corporation agrees with its employee, who had purchased materials and dies intending to go into business for himself, to pay him the value of such materials as it wanted and could use in filling orders, the question of what the employee paid for such materials is immaterial in an action by him to recover the value of those taken and used by the corporation.

4. SAME—*when record or statement of articles used is admissible as a rendered statement of account.* Where the plaintiff in assumpsit testifies as to each item and to the truth of a record made by him from memorandum slips made at the time each article of his property was used by the defendant, and it is shown that such record was delivered to the defendant some three months before the suit was brought but that no objection was made to it, the record is admissible in evidence as a statement delivered to the defendant and not objected to.

5. INSTRUCTIONS—*instructions may, and should, be applied to the case on trial.* The law does not require the court to give the jury mere abstractions, but the court may, and should, apply the rules of law to the facts of the case on trial.

6. SAME—*separating municipal court's charge into paragraphs for criticism on appeal is improper.* The practice of counsel in

arbitrarily dividing the municipal court's continuous and connected charge to the jury into paragraphs for the purpose of dissection, criticism and objection on appeal is unwarranted, and if the charge, taken as a whole, is not incorrect or misleading, harmless inaccuracies therein are not ground for reversal.

.7. SAME—*when instruction as to right of recovery in assumpsit is not incorrect.* If there is evidence upon which to base it, an instruction in assumpsit is not erroneous which permits a recovery if the plaintiff's property was turned over to the defendant corporation and used in its business for its benefit and profit and with its knowledge, or even if it was turned over and so used without the defendant's knowledge if within a reasonable time thereafter the defendant had such knowledge, through some officer or agent who had authority to approve or ratify the sale, and did not repudiate the transaction.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding.

TODD LUNSFORD, and ELMER & COHEN, for appellant.

JOSEPH CUMMINS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the municipal court of Chicago for $2000 in favor of George G. Greenburg, the appellee, against S. D. Childs & Co., a corporation, the appellant, in an action of the first class.

It is contended that the trial court erred in refusing to direct a verdict for the defendant, and the question being whether there was evidence which, if believed by the jury, would sustain a verdict for plaintiff, the court was bound to assume the truth of such evidence. On such assumption the facts were, in substance, as follows: The plaintiff, in December, 1903, had been in the employ of the defendant

for twenty years and his term of employment would end on January 1, 1904. The defendant was engaged in the manufacture of metal novelties for the trade, such as stick pins, badges, watch charms and the like, and plaintiff was the manager of the sheet metal department. Intending to quit the employment at the end of his term, he bought a business of the same kind of T. F. Moore & Co., consisting of the stock, machinery, dies, goods completed and partly completed, orders on hand, etc. This business was bought by the plaintiff with the intention of going into business for himself at the end of his term, and the president of the defendant learning of such intention urged the plaintiff to remain, and proposed to him that if he would drop the scheme, discontinue the Moore & Co. business, turn over the orders of Moore & Co. on hand and the goods completed or partly completed, and not allow any of the assets, dies or other property to pass into the hands of defendant's competitors, the defendant would increase his salary from $2500 to $3000 per annum and would take and pay the plaintiff for any materials, dies or machinery that defendant could use, as rapidly as orders called for them, and would sell the plaintiff some stock and make him a director in the corporation. The merchandise completed or partly completed on hand in the Moore plant was to be delivered by the defendant in its name, billed to customers, collected for and the proceeds (in case of completed merchandise) credited to the plaintiff, and in case of uncompleted merchandise the proceeds to be credited less the cost of completion, and the plaintiff was to have employment for three years. The plaintiff agreed to the proposition, closed up the Moore plant and took the materials,—German silver, copper, bronze, sheet iron, and things of that kind,—to the Jackson street factory of the defendant and the machinery to the defendant's new building on Monroe street. There were daily conversations between the plaintiff and the president of the defendant concerning the mat-

ter for a week or ten days, and a few days after the first
proposition the president told him that he could have stock
of the defendant of the par value of $10,000 for $3000
when he should have paid that much by money or credit.
The plaintiff sold to other parties bolts, pulleys and ma-
chinery which would not affect the competition between the
defendant and other manufacturers, and continued in the
management of the defendant's sheet metal department for
three years. Dies and material were used by the defend-
ant, as occasion required, in turning out orders. Letters
were written to Moore & Co.'s customers stating that de-
fendant had bought the assets, business and good will of
the Moore company. As portions of the property of plain-
tiff were used he kept memoranda of the same, but it never
amounted to $3000, and nothing was ever done with re-
spect to the proposition for stock. The plaintiff never re-
ceived any stock and never was offered any. He completed
his three years' engagement and then went into business for
himself and claimed payment for his property which defend-
ant had used in its business in pursuance of the agreement.

The declaration consisted of the *indebitatus assumpsit*
counts, and the chief reason alleged for directing a verdict
is, that the plaintiff's evidence proved an agreement of the
defendant to pay for the plaintiff's property used in its busi-
ness in capital stock, of which the plaintiff was to have
$10,000 in par value for $3000, to be accumulated by the
account, and no recovery could be had on the common
counts. Counsel say that the plaintiff relied solely on an ex-
press contract by which he was to be paid in stock for the
property, but we do not regard that as a fair statement
of his testimony. The argument is based on answers of
the plaintiff in cross-examination, which, fairly interpreted,
meant only that he was to have the privilege of taking the
stock and was willing to do so. The dies were of no use
except as orders were received and the material was to be
used only when required by the orders, and it was problem-

242 — 8

atical whether the account would amount to much or little. The plaintiff did not agree to pay cash to make up the sum of $3000, and it is unfair to say that his testimony justifies a conclusion that he was to have nothing for his property unless the account amounted to $3000. The offer of the stock was independent of the agreement first made that the defendant should take and pay for such of the plaintiff's property as it might require and use, and the plaintiff did not enter into any obligation to take the stock. A further reason insisted upon as ground for directing a verdict is, that plaintiff did not show full compliance on his part by adding cash to the account sufficient to make it $3000, but as there was no such agreement there was no default on the part of the plaintiff. The court did not err in refusing to direct a verdict.

The next complaint against the trial court is, that it erred in ruling on the admission of evidence. The plaintiff testified that he bought the manufacturing metal business of T. F. Moore & Co., including the machinery, dies, tools, supplies, orders on hand, completed and partially completed goods, and good will, for $5000. On cross-examination he testified that he did not know how much he paid for materials, how much for machinery or dies or the various things separately. Defendant attempted, on further cross-examination, to go into the details of the payment and the cost to the plaintiff of the different items,—what was paid for good will and for articles not used in the defendant's business. The court did not err in sustaining objections to such evidence. The dies and material used by the defendant were only such as it wanted and could use on orders received, and no specific portion of the cost could be assigned to the same. It was proved, and not denied, that the plaintiff had bought the property for his own use to go into business, and if the defendant agreed to pay its value it was entirely immaterial what he had paid for it. From time to time, as articles belonging to plaintiff were

taken and used in the defendant's business, plaintiff made slips or memoranda of the same. From these slips and loose papers he made up a record of the property taken, and he testified to each item and to the truth of the record. On the cross-examination of the defendant's president testifying for the defendant, it appeared that this record or statement was delivered to the defendant three months before the suit was brought and no objection appeared to have been made to its correctness. It was then admitted in evidence in connection with the cross-examination, against the objection of the defendant. It was not admitted as primary evidence of the truth of the account, each item of which had been testified to by the plaintiff, but was admitted as the statement sent to the defendant of the property used by it. The court did not err in admitting it as such statement delivered to defendant and to which no objection was made.

The court instructed the jury orally, by a continuous and connected charge, and counsel, for the purposes of dissection, criticism and objection, have divided it into paragraphs, as counsel call them, numbered from 1 to 25. This proceeding is unwarranted, and the purely artificial division enables counsel to criticise particular statements, omitting other portions of the charge which qualified such statements. The charge, taken as a whole, was not incorrect or misleading. There was some inaccuracy in stating a supposed presumption that the price paid by the plaintiff would be evidence of the fair market value of the property in the absence of any specified price to be paid by the defendant, but that statement could not have harmed the defendant. There was evidence for the defendant that the plaintiff, in fact, paid but $1200 or $1300 for the entire assets of Moore & Co., and the purpose of the court was to explain that the plaintiff, while in control of the sheet metal department of defendant's business, could not, under an implied contract to pay for his own goods, recover more than their actual cost to him. One objection to the charge

is, that the court gave undue prominence to plaintiff's evidence, but the portion of the charge pointed out was merely a statement what the claim of the plaintiff was. The court stated the items and the amounts showing the nature of the claim, and in connection with it stated the defense. Another portion of the charge objected to on the same ground related to orders which the plaintiff bought with the assets of T. F. Moore & Co. and turned over to the defendant, and was not objectionable. The law does not require a court to give to a jury mere abstractions, but the court may, and should, apply the rules of law to the case on trial. Plaintiff testified to an express agreement with the president of the defendant, but there was no dispute of the fact that the plaintiff's property was taken and used in the defendant's business, and there was evidence from which the jury might properly find that such taking and use was with the defendant's knowledge. The court in the charge stated the law applicable to such evidence, and the plaintiff was permitted to recover for the property if the jury found, from the evidence, that such property was turned over to the defendant and used in the prosecution of its business, for its benefit and to its profit and with its knowledge, or if the property was turned over to the defendant and so used without its knowledge, but within a reasonable time thereafter the defendant had such knowledge and did not repudiate the transaction within a reasonable time, provided the specific knowledge thereof came to defendant through some other agent or officer who had authority to approve or ratify the sale. We find no error in that statement of the law, and as there was evidence to which it was applicable, the charge was not erroneous in that respect.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*